UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

– against –

SHIRLEY HUNTLEY,

Defendant.

**FINDINGS OF FACT AND
LAW, MEMORANDUM,
ORDER, AND STAY**

13-CR-54

JACK B. WEINSTEIN, **Senior United States District Judge:**

I.     **Introduction**

        Defendant, former New York State Senator Shirley Huntley, has pled guilty to

participating in a conspiracy to commit mail fraud by embezzling State funds earmarked for a

non-profit organization under her control.  *See* 18 U.S.C. § 371; Min. Entry, Jan. 30, 2013, ECF

No. 7.  In an effort to reduce her sentence, under the guidance of the government, she taped

conversations with other State legislators and local officials.  Their names are listed in a

sentencing memorandum of her attorney filed under seal without the court's consent.  *See* Def.'s

Sentencing Mem., May 2, 2013, ECF No. 16 (filed under seal) ("Def. Mem").  They will be

material to the sentencing judge in determining how defendant should be punished for her crime.

*See, e.g.*, United States Sentencing Comm'n, Guidelines Manual § 5k1.1 (Nov. 2012).

        Members of the press have filed a petition seeking unsealing so they can obtain the

names of those she taped.  Ltr. from Members of the E.D.N.Y. Press Corps, May 3, 2013, ECF

No. 18; Ltr. from Members of the E.D.N.Y. Press Corps, May 7, 2013, ECF No. 19.  The

government objects that revelation would interfere with ongoing criminal investigations.  *See*

Hr'g Tr., May 6, 2013; Hr'g Tr. May 7, 2013; Gov't Ltr. Regarding Sealing of Docs., May 7,

2013, ECF No. 20 (filed publicly); Gov't Ltr. Setting Forth Status of Investigation, May 7, 2013

(portions under seal except as read into record on May 7, 2013); Gov't Ltr. Setting Forth Details of Def.'s Cooperation, May 7, 2013 (filed under seal).  A full hearing was conducted on May 6 and 7, 2013.  *See* Hr'g Tr., May 6, 2013; Hr'g Tr., May 7, 2013.

For the reasons described below, the petition is granted.

## II.     Facts

Defendant filed her sentencing memorandum under seal on May 2, 2013 without seeking leave of the court for sealing.  *See* Def. Mem.  It describes how defendant "recorded and photographed" nine individuals "on multiple occasions."  Def. Mem. 8.  It identifies by name those monitored.  *Id*.  Sections contain detailed information pertaining to the health of defendant and her family.  *Id*. 3-5.

The government's sentencing memorandum was filed the next day.  *See* Gov't Sentencing Mem., May 3, 2013, ECF No. 17 ("Gov't Mem.").  It was not filed under seal; nor was it redacted.  It discloses that:

> Between June 2012 and August 2012, the defendant, *while acting at the direction of the government*, made numerous recordings of meetings with nine different people, including seven elected officials and two individuals who had previously been employed as a staff member or a consultant by elected officials.  Recordings of four of the elected officials, as well as the two non-elected individuals, did not yield any evidence of criminal activity. *However, recordings of meetings the defendant held separately with State Senator #1 and two other elected officials did yield evidence useful to law enforcement authorities*, and the details of those recordings are discussed in a separate sealed letter to be filed next week.

*Id*. at 5. (emphasis added).

The assistance provided by defendant to the government by recording conversations has been the object of substantial recent press coverage.  *See, e.g.*, Thomas Kaplan & William K. Rashbaum, *Second Albany Legislator Secretly Taped Colleagues*, N.Y. Times, May 3, 2013; John Riley, *Feds: Sen. Shirley Huntley Recorded "Useful" Conversation with Elected Officials*,

Newsday, May 3, 2012; John Marzulli & Kenneth Lovett, *Ex-State Sen. Shirley Huntley Recorded Conversations for Feds, Court Docs Say; More Arrests of Pols on the Way*, Daily News, May 4, 2013.  It is one of many current stories about federal investigations and prosecutions of New York State and local officials.

III.    **Records of Court Are Presumptively Open**

The news media is protected in its freedom to seek, have access to, and print information in government files.  *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech, or of the press."); *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) (right to print information); Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (right to obtain information).

The beneficiaries of this freedom are citizens who require full information about the workings of their government if they are to govern effectively in a democracy.  Our Constitution assumes that the light of the press shining into the innards of government is necessary to inhibit violation of the public trust.  *Cf. Olmstead v. United States*, 277 U.S. 438, 478 (1928) (Brandeis, J. dissenting) ("Sunlight is said to be the best of disinfectants; electric light the most efficient policeman.").

Particularly important is transparency in our judicial branch.  Its power depends upon the people's confidence.  That confidence is founded on the fact that the material judges rely on for decision is available to the public—decisions by which judges' work is judged.  *See United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995) ( "*Amodeo II*" ) ("Where access is for the purpose of reporting news . . . those interested in monitoring the courts may well learn of, and use, the information whatever the motive of the reporting journalist.").  Thus, the presumption against sealing of documents in court files is a strong one.

3

Sentencing proceedings are presumed to be open to the public under the First Amendment's right of access to judicial proceedings and documents. *See United States v. Alcantara*, 396 F.3d 189, 196-98 (2d Cir. 2005) (right to access plea and sentencing proceedings); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 10 (1986) (First Amendment right of access to preliminary hearings). Documents used in aid of sentencing are independently presumed to be open to the public pursuant to the common law right of public access. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978) (common-law right of access to judicial documents); *Amodeo II*, 71 F.3d at 1048-50 (standard governing presumption); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). This presumption of openness is reflected in Congress's directive for sentencing proceedings to be held "in open court." 18 U.S.C. § 3553(c). *See also* United States Sentencing Comm'n, Guidelines Manual 12 (Nov. 2012) ("An advisory guideline system continues to assure transparency by requiring that sentences be based on articulated reasons stated in open court that are subject to appellate review."). An exception for the court's Probation Services' presentence reports is based largely on the promise of confidentiality the Service often makes to obtain information. *See Alcantara*, 396 F.3d 197 n.6 ("Courts have generally held . . . that there is no First Amendment right of access to *pre-sentence reports*." (citing *United States v. Corbitt*, 879 F.2d 224, 237 (7th Cir. 1989) (emphasis added)); *United States v. Charmer Indus., Inc.*, 711 F.2d 1164, 1175 (2d Cir. 1983) ("[C]ompelling demonstration that disclosure of the [presentence] report is required" before release to third parties).

The First Amendment provides a "qualified . . . right of access" to sentencing proceedings. *Alcantara*, 396 F.3d at 199. *Proceedings may be closed and documents sealed if "'specific, on the record findings . . . demonstrating that closure is essential to preserve higher*

4

*values and [any imposed restriction] is narrowly tailored* to serve that interest.'" *Id.* (quoting

*United States v. Haller*, 837 F.2d 84, 87 (2d Cir. 1988) (emphasis added).  While the Court of

Appeals for the Second Circuit has not yet had occasion to articulate such "higher values" in the

context of sentencing proceedings, district courts have identified as one of them the need to

avoid "jeopardizing ongoing or future investigations," *United States v. Milken*, 780 F. Supp. 123,

127 (1991), and "[t]he need for confidentiality of the investigation," *United States v. Park*, 619

F. Supp. 2d 89, 94 (S.D.N.Y. 2009).  Where possible, limited redaction instead of wholesale

sealing of court documents should be considered in order to adequately safeguard First

Amendment values.  *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987), *cert. denied*

*sub nom.*, *Esposito v. New York Times Co.*, 485 U.S. 977 (1988).

       Under common law, "judicial documents" that are "relevant" and "useful" to the judicial

process are afforded a presumption of openness.  *See Amodeo I*, 44 F.3d at 145.  The particular

"weight" afforded to openness will be heaviest when "judicial documents" directly affect

adjudication, including a court's sentencing decision.  *Amodeo II*, 71 F.3d at 1049;  *cf. United*

*States v. Gotti*, 322 F. Supp. 2d 230, 250 (E.D.N.Y. 2004 ) (sentencing *letters accorded "little*

*weight"* because they "did not influence the sentence" (emphasis added)).  Any presumption of

availability to the public must be balanced against countervailing factors such as "the danger of

impairing law enforcement or judicial efficiency" and privacy interests.  *Amodeo II*, 71 F.3d at

1050.

## IV.    Interference with Ongoing Criminal Investigations

       It is understood that a balance—a proportionate response—needs to be considered where

premature revelations of criminal investigations may stymie law enforcement by allowing

criminals to destroy evidence and to take other measures to prevent a full inquiry into possible crimes.

The instant application might be analogized to *United States v. Milken*. There, the defendant and government jointly moved to seal portions of papers related to a motion for a reduced sentence based on the defendant's post-conviction assistance to the government. *Milken*, 780 F. Supp. at 124-26. Limited redactions were ordered by the court on the ground "that the public should have access to *information as to the general nature and extent of defendant's cooperation*, if disclosure can be made without jeopardizing ongoing or future investigations, but *information that identifies the target, subject or status of a particular government investigation must be redacted, so long as that information has not previously been publicly revealed*." *Id*. at 127 (emphasis partly in original).

*Milken* is not, however, on point. Here, unlike in *Milken*, those recorded through defendant's assistance can infer who they are by information that is publicly available and by their own knowledge of contacts with Huntley. It is well known that widespread investigations of New York State legislators and related officials are being conducted by the government. Information about wires worn by the pleading guilty has been widely reported by the press and disclosed by the government in court filings. *See* Part II (facts), *supra*; Thomas Kaplan, *Albany Riveted by Double Life of an Assemblyman and Informer*, N.Y. Times, Apr. 9, 2013. Every legislator who has conversed with this defendant will necessarily assume that he or she was recorded under the supervision of the FBI. There will be no surprises to the potentially accused by the revelations of their names. Interference with ongoing investigations will be of almost no significance.

6

## V.    Unfairness to those Presumed Innocent

In the case of a person recorded with the aid of defendant, no adverse information was acquired.  Yet, revelation of the name may lead some members of the public to find—wrongly—"fire" when nothing but "smoke" exists.  Courts have an obligation not to cater to any "morbid craving for that which is sensational and impure."  *In re Caswell*, 18 R.I. 835, 835 (1893).

To protect against such unfairness, the presumption of innocence is built into our system of law and ethos.  "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."  *Coffin v. United States*, 156 U.S. 432, 453 (1895); c*f. Press-Enterprise Co.*, 478 U.S. at 15 ("The First Amendment right of access cannot be overcome by the conclusory assertion that publicity might deprive the defendant [of the right to an impartial verdict].").  The sense of fairness by the American public and assumption of innocence before conviction provides considerable insurance against the dangers of unsealing.

Countervailing privacy interests are at the lowest for matters that have far-reaching "public ramifications" and where there exists "a fair opportunity for the subject to respond to any accusations contained therein."  *Amodeo II*, 71 F.3d at 1051.  "One does not lose one's right to speak upon becoming a legislator."  *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 69 (2d Cir. 1999).  Political figures are well-equipped and have ample opportunity to respond to any accusations of wrongdoing.  Privacy interests should be trumped when evoked to protect public officials from criticism.  *See Garrison v. State of Louisiana*, 379 U.S. 64, 73 n.9 (1964) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned.").

## VI.   Discouraging Good People from Participating in Government

The argument that some may avoid lending their talents to public life in order to avoid its slurs has slight weight. Since this country's beginning, when Jefferson, Hamilton, Burr, and others began developing the art of American politics, anyone who entered the arena of government has understood that his or her good name may be unfairly sullied. Yet, the honor and excitement of serving the public has not inhibited our best people from entering the fray of politics. To paraphrase President Harry Truman, "those who cannot stand the heat should stay out of the kitchen." Decent public servants can stand the heat.

## VII.   Conclusion

Defendant's sentencing memorandum shall be unsealed. No objection has been made to continued sealing with reference to ill relatives of the defendant; references to them shall be redacted.

No further findings of fact are required. *Cf. Alcantara*, 396 F.3d at 199 (findings of fact required before sealing; no requirement on unsealing).

## VIII.   Stay

This order is stayed for twenty-four hours to permit application to the Court of Appeals for the Second Circuit for a more extended stay.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   May 7, 2013
        Brooklyn, New York

2⁰⁰ P. M.

8